IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**MIRIAM MICHAUD VAUGHAN,**

        Plaintiff,

v.                                        Civil Action No. 3:09-CV-50
                                                      (BAILEY)

**VANCE DENNIS DIXON, MASON
DIXON INTERMODAL, INC., and USAA
CASUALTY INSURANCE COMPANY,**

        Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND

Currently pending before this Court is the plaintiff, Miriam M. Vaughan's, Motion to Remand [Doc. 6], which was filed on August 20, 2009. Defendants Vance D. Dixon and Mason Dixon Intermodal, Inc., filed their response in opposition [Doc. 9] to Plaintiff's Motion to Remand on September 3, 2009. At the time of this Order, Plaintiff had yet to file a reply. This Court, having reviewed the motion and the memoranda submitted with regard thereto, finds that the plaintiff's Motion to Remand [Doc. 6] should be **DENIED**.

## BACKGROUND

This action arises from an automobile accident that occurred on March 7, 2008, near the intersection of U.S. Route 340 and County Route 32 (Chestnut Hill Road) in Jefferson County, West Virginia. ([Doc. 1-2] at 4-5). At the time of the accident, Defendant Vance D. Dixon ("Dixon") was driving a truck in the course and scope of his employment for Mason Dixon Intermodal, Inc. ("Mason Dixon"). (Id. at 5). The plaintiff, Miriam M. Vaughan ("Ms. Vaughan"), claims that Dixon operated the truck negligently, in that Dixon, *inter alia*,

1

failed to "stop/slow the Mason Dixon vehicle to avoid the collision with [Plaintiff's] vehicle." (Id.). Ms. Vaughan alleges that she:

> sustained injuries to her back, neck and knees and other areas of her body; has been prevented from engaging in her normal activities; has suffered emotional distress and great pain of body and mind; has suffered the loss of enjoyment of life; has sustained temporary and probably permanent disability; has incurred and may in the future incur doctor, hospital and related bills in an effort to be cured of said injuries, said medical expenses now exceeding $23,800.00; and has lost time from work and, therefore, lost income exceeding $15,000.00, and may in the future lose income and earning capacity.

(See Id. at 6). Based upon these allegations, Ms. Vaughan seeks compensatory damages, both general and special. (Id. at 6-7). The *ad damnum* clause of the Complaint does not state a dollar amount. (Id.).

On July 21, 2009, Defendants Dixon and Mason Dixon removed the above-styled action to this Court from the Circuit Court of Jefferson County, West Virginia pursuant to 28 U.S.C. §§ 1441 and 1446. [Doc.1]. The defendants base federal jurisdiction upon diversity jurisdiction pursuant to 28 U.S.C. § 1332 under which federal district courts have original jurisdiction if the case involves citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs. (Id. at 2). Undoubtedly, complete diversity of citizenship exists in the instant case: the plaintiff is a citizen of the State of West Virginia, residing in Jefferson County, West Virginia; Dixon is a citizen of the State of Maryland, residing in Baltimore, Maryland; Mason Dixon is a Michigan corporation with its principal place of business in Warren, Pennsylvania; and USAA Casualty Insurance Company ("USAA") is a Texas corporation with its principal place of business in San

Antonio, Texas.[1]  (Id. at 1-2).  Thus, the determinative issue is whether the jurisdictional amount is satisfied.

On August 20, 2009, Plaintiff filed the pending Motion to Remand [Doc. 6], alleging that "[t]he defendants have not satisfied their burden for removal, as the amount in controversy is not apparent on the face of the Plaintiff's Complaint."  ([Doc. 6] at 4, ¶ 11).  In their response [Doc. 9], filed September 3, 2009, Dixon and Mason Dixon, first, clarified that it is proper for this Court to consider not only the Complaint but also to conduct an independent evaluation to decide whether the jurisdictional amount is satisfied.  ([Doc. 9] at 2).  Second, based upon this clarification, the defendants argue that the amount in controversy exceeds $75,000.00.  (Id. at 5).

With reference to the sufficiency of the Complaint, the defendants emphasize Plaintiff's claims for pain and suffering, probable permanent disability, lost income exceeding $15,000.00, and medical expenses exceeding $23,800.00, arguing that these claims will exceed $75,000.00.  (Id.).

Finally, Defendants included two attachments for the Court to use in its independent evaluation. [Doc. 9-1 & Doc. 9-2].  The first attachment includes a February 19, 2009 itemization of Plaintiff's medical expenses, totaling $24,741.47, and psychological and medical reports, indicating that Plaintiff may require future medical treatment. [Doc. 9-1].  The second attachment is an August 28, 2009 letter from Defendants' attorney to Plaintiff's counsel, confirming that a conversation between the two at the Rule 26(f) Conference on

---

[1] Defendants Dixon and Mason Dixon note correctly in their Notice of Removal that the consent of USAA is not required to remove this case to federal court, as Plaintiff improperly identified USAA as a defendant.  See **Dean v. Roberts**, No. 5:05cv85, 2006 U.S. Dist. LEXIS 2647 (N.D. W.Va. Jan. 13, 2006).

3

August 20, 2009, in which Plaintiff's attorney allegedly refused to stipulate that damages will not exceed $75,000.00 in exchange for Defendants not contesting Plaintiff's Motion to Remand. [Doc. 9-2]. At the time of this Order, Plaintiff had yet to file a reply.

## DISCUSSION

### I. Standard

When an action is removed from state court, a federal district court is required to first determine whether it has original jurisdiction over the plaintiff's claims. In this case, that issue depends on whether the amount in controversy exceeds $75,000.00.[2]

"The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" **Maryland Stadium Authority v. Ellerbe Becket Incorporated**, 407 F.3d 255, 260 (4th Cir. 2005), citing **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994). Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. **Shamrock Oil & Gas Corp. v. Sheets**, 313 U.S. 100 (1941).

If federal jurisdiction is doubtful, a remand to state court is required. **Maryland Stadium**, 407 F.3d at 260. On the other hand, if this Court has jurisdiction, it is required to exercise it. **Gum v. General Electric Co.**, 5 F.Supp.2d 412, 415 (S.D. W.Va. 1998) ("It is well-established federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'").

In a removal action in which federal jurisdiction is premised upon 28 U.S.C. § 1332, the defendant bears the burden of proving that the plaintiff's claim exceeds the jurisdictional

---

[2]The Court notes that complete diversity exists amongst the parties and that this dispute does not implicate federal question jurisdiction.

amount. ***Landmark Corp. v. Apogee Coal Co.***, 945 F.Supp. 932, 935 (S.D. W.Va. 1996). Often, this burden is settled without argument because a plaintiff's good-faith claim for specific monetary damages in the complaint binds the defendant. ***St. Paul Mercury Indem. Co. v. Red Cab Co.***, 303 U.S. 283, 288 (1938); *see also* ***Horton v. Liberty Mut. Ins. Co.***, 367 U.S. 348, 353 (1961) (stating that general federal rule is that complaint determines the amount in controversy and, consequently, federal jurisdiction). However, when the complaint's *ad damnum* clause does not specifically state the amount in controversy, several courts require the removing defendant to prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount. ***Tapscott v. MS Dealer Serv. Corp.***, 77 F.3d 1353, 1357 (11th Cir. 1996); ***De Aguilar v. Boeing Co.***, 11 F.3d 55, 58 (5th Cir. 1993); ***Gafford v. Gen. Elec. Co.***, 997 F.2d 150, 158 (6th Cir. 1993); ***Sanchez v. Monumental Life Ins. Co.***, 102 F.3d 398, 403-04 (9th Cir. 1996); ***Lohan v. Am. Express Co.***, No. 2:09-613, 2009 U.S. Dist. LEXIS 74033 (S.D. W.Va. Aug. 19, 2009); ***Allman v. Chancellor Health Partners, Inc.***, No. 5:08-cv-155, 2009 U.S. Dist. LEXIS 57022 (N.D. W.Va. Mar. 2, 2009). It has been said that the preponderance of the evidence standard strikes "the proper balance between a plaintiff's right to choose his forum and a defendant's right to remove, without unnecessarily expanding federal diversity jurisdiction." ***Tapscott***, 77 F.3d at 1357.

In order to meet the preponderance of the evidence standard and to establish jurisdiction upon removal, a defendant must show that it is more likely than not that the amount in controversy exceeds the jurisdictional amount. ***Landmark Corp.***, 945 F.Supp. at 935 (citing ***Tapscott***, 77 F.3d at 1357). To satisfy this burden, a defendant must offer

5

more than a bare allegation that the amount in controversy exceeds $75,000.00. *See* **Gaus v. Miles, Inc.**, 980 F.2d 564, 567 (9th Cir. 1992). Instead, a defendant seeking removal must "supply evidence to support his claim regarding te amount at issue in the case." **Sayre v. Potts**, 32 F.Supp.2d 881, 886 (S.D. W.Va. 1999).

Specifically, the amount in controversy is determined by "considering the judgment that would be entered if the plaintiff prevailed on the merits of his case as it stands at the time of removal." ***Id.*** (citing **Landmark Corp.**, 945 F.Supp. at 636-37). To calculate this amount, a court must consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. **Weddington v. Ford Motor Credit Co.**, 59 F.Supp.2d 578, 584 (S.D. W.Va. 1999); *see also* **Mullins v. Harry's Mobile Homes**, 861 F.Supp. 22, 24 (S.D. W.Va. 1994) (specifically stating that court may consider complaint, removal petition, and "other relevant matters in the file"). In conducting this analysis, the court may consider:

> the type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed. The defendant may also present evidence of any settlement demands made by the plaintiff prior to removal although the weight to be given such demands is a matter of dispute among courts.

**Watterson v. GMRI, Inc.**, 14 F.Supp.2d 844, 850 (S.D. W.Va. 1997) (internal citations omitted). Finally, in resolving the amount in controversy issue, a court "is not required to leave its common sense behind." **Mullins**, 861 F.Supp. at 24.

## II. Analysis

### A. Face of the Complaint

Plaintiff argues that the defendants have failed in their burden of proving that the amount in controversy exceeds the jurisdictional amount because "the amount in controversy is not apparent on the face of the . . . Complaint." (See [Doc.6] at 4, ¶ 11). This Court disagrees.

In *Campbell v. Restaurants First/Neighborhood Restaurant, Inc.*, 303 F.Supp.2d 797 (S.D. W.Va. 2004), the court denied the plaintiff's motion to remand where the medical bills totaled $18,874.51. In reaching this conclusion, the court stated, "[a]lthough her medical bills total just shy of $20,000, when one considers the additional elements of pain and suffering and future damages, one can easily conclude the amount in controversy is satisfied." *Campbell*, 303 F.Supp.2d at 799.

Similar to the plaintiff in *Campbell*, Plaintiff stated in her Complaint that her medical bills exceed $23,800.00[3], though she also emphasized the painful and permanent nature of her injuries. (See [Doc.1-2] at 6, ¶ 12). Specifically, in paragraph 12 of her Complaint, Plaintiff alleges, *inter alia*, that she, "has suffered emotional distress[,] great pain of body and mind[, and] the loss of enjoyment of life" and "has sustained temporary and probably permanent disability." (Id.). Like the *Campbell* court, this Court consider's these allegations of pain and suffering and future damages sufficient to satisfy the amount in controversy. Unlike the plaintiff in *Campbell*, Plaintiff also asserted in her Complaint that

---

[3]Plaintiff's February 19, 2009, Itemization of Economic Losses indicate that her medical expenses totaled $24,741.47 approximately six months before she filed the Complaint. ([Doc. 9-1] at 2-4).

7

she, "has lost time from work and, therefore, lost income exceeding $15,000.00, and may in the future lose income and earning capacity." ([Doc. 1-2] at 6, ¶ 12). Thus, that Plaintiff also seeks past and future wages, specifically stating an amount for the former, makes this case even less of a close call than in *Campbell*. Therefore, this Court finds that the face of Plaintiff's Complaint satisfies the amount in controversy. However, even if the face of the Complaint fails to meet the jurisdictional limit, an independent evaluation of the remaining record satisfies the burden.

### B. Court's Independent Evaluation

Defendants argue that "the descriptions of Plaintiff's ongoing complaints, diagnoses, and need for future treatment" as well as "the Plaintiff's refusal to stipulate that damages will not exceed $75,000.00" also lead to a conclusion that the jurisdictional amount is satisfied. ([Doc.9] at 5). This Court agrees.

In *Patton v. Wal-Mart Stores*, No. 5:05-0655, 2005 U.S. Dist. LEXIS 41010 (S.D. W.Va. Sept. 26, 2005), the court denied the plaintiffs' motion to remand, where the plaintiffs' medical bills at the time of removal totaled less than $5,000.00. The district court based this conclusion on two facts: (1) plaintiffs' counsel had advised defendants that there is "a significant possibility that [one of the plaintiffs] will have to undergo . . . surgery in the near future[,]" and the plaintiffs had refused to stipulate that damages will not exceed $75,000.00 in exchange for the defendants not contesting plaintiffs' motion to remand. *Patton*, at *6.

As in *Patton*, this record shows that there is a significant possibility that the plaintiff will have to undergo future medical treatment both for ongoing psychological and physical ailments. This estimation is based upon the findings of two medical reports: (1) the

8

December 31, 2008 Forensic Psychological Evaluation[4] ([Doc. 9-1] at 5-15) and (2) the May 7, 2009 Independent Medical Evaluation[5] ([Doc. 9-1] at 16-24).

The psychological evaluation indicated that, as a result of the accident and resulting injuries, the plaintiff "is struggling with a moderate degree of depression that fluctuates to some degree, with occasional days of little or no depression, but many more days of moderate depression." (Id. at 13). The report also states that Plaintiff's "high level of anxiety remains fairly constant at the mild to moderate level." (Id.). Consequently, the report recommends that Plaintiff "enter into a counseling relationship with a mental health provider experienced in providing assistance to individuals struggling with chronic pain and resulting psychological discord." (Id. at 15).

The medical evaluation, while confirming Plaintiff's ongoing depression and anxiety, added that Plaintiff suffers from "post-concussive syndrome," which involves "[t]he persistence of neurologic deficits, particularly in the areas of balance, cognition, behavior, headache and auditory and visual processing." (Id. at 21). The report also diagnosed Plaintiff with ongoing myofascial pain, which is pain that typically manifests itself in the skeletal muscles of the body as the result of an injury such as whiplash. (Id.). For the "post-concussive syndrome," the report explained that Plaintiff "would benefit from an intense, multi disciplinary cognitive rehabilitation program." (Id. at 22). With regard to the myofascial pain, as wells as the depression and anxiety, the treatment recommendations

---

[4]Bernard J. Lewis, Ph.D., from the Forensic Psychology Center, Inc., in Winchester, Virginia, conducted this evaluation and compiled this report.

[5]Kimberly H. Salata, M.D., from the Winchester Musculoskeletal Medicine, P.L.C., in Winchester, Virginia, conducted this evaluation and compiled this report.

were to seek "pharmacologic intervention. . .." (Id.). Finally, the report stated that Plaintiff had not yet reached her "maximum medical improvement" and concluded that Plaintiff's prognosis was "[f]air to good depending on the treatment available." Thus, according to these two reports, Plaintiff, like the plaintiff in *Patton*, faces a significant possibility of future medical treatment.

Moreover, as in *Patton*, Plaintiff has allegedly refused to stipulate that damages will not exceed $75,000.00 in exchange for Defendants not contesting Plaintiff's Motion to Remand. (See [Doc. 9-2]). Thus, because both of the bases of the *Patton* court's findings regarding amount in controversy are present in the instant case, this Court finds that an independent evaluation of the record also leads to a conclusion that the jurisdictional amount has been met.

Therefore, considering the totality of the circumstances surrounding this case, the Court finds that Defendants have met their burden of showing by a preponderance of the evidence that this case meets the amount in controversy requirement associated with diversity jurisdiction. Accordingly, this Court has original jurisdiction and removal was appropriate.

## **CONCLUSION**

For the reasons stated above, this Court finds that the Plaintiff's Motion to Remand **[Doc. 6]** should be, and hereby is, **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: September 8, 2009.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE